HANNAH MURPHY, Guardian, Appellee, v. DENNIS L. CALLAN et al., Appellants.

**DESCENT AND DISTRIBUTION:** Advancements — Difference Between Purchase Price and Value of Land. A marked difference between the value of land conveyed by a parent to his child and the amount paid by the child for the land presumptively constitutes an advancement. Evidence held sufficient to support a finding that the presumption was not overcome.

**APPEAL AND ERROR:** Scope of Review—Probate Proceedings. Probate proceedings tried in the lower court as an ordinary proceeding are reviewable on appeal on errors only. The appellate court will not, therefore, review the evidence for the purpose of sitting in judgment upon the weight of the evidence or the credibility of the witnesses.

Headnote 1. 18 C. J. pp. 933, 939. Headnote 2. 15 C. J. p. 1023 (1926 Anno.)

*Appeal from Iowa District Court.*—R. G. POPHAM, Judge.

SEPTEMBER 26, 1924.

REHEARING DENIED JANUARY 16, 1925.

ACTION in probate, to have the difference between the value

of lands conveyed by a parent to children and the amount paid by the children as the consideration therefor declared to be advancements. From a judgment and decree in plaintiff's favor, the defendants appeal.—*Affirmed.*

*P. P. White* and *Dutcher & McClain,* for appellants.

*W. E. Wallace, James P. Gaffney,* and *Stapleton & Stapleton,* for appellee.

VERMILION, J.—Ann Callan, deceased, a widow, 68 years old, was, sometime prior to her death, the owner of about 558 acres of land in Iowa County and certain lots in the town of Parnell. She was in debt to the amount of about $10,000. The lots, it seems to be conceded, were of the value of about $3,600. She had one son and three daughters living, the defendants and appellants herein. The plaintiff and appellee is the guardian of a granddaughter, the only child of a deceased son, Joseph. Ann Callan died intestate, December 22, 1920, leaving the plaintiff's ward and the defendants as her only heirs at law. Prior to her death, the deceased executed and delivered a warranty deed conveying 121.74 acres of the land to her son, the appellant Dennis L. Callan, for an expressed consideration of $10,000, and a like deed conveying the remainder of the land to her three daughters, appellants, for an expressed consideration of $21,000. These deeds were executed by the deceased on March 3, 1920, and left with the banker who had prepared them, to be delivered on the payment by the respective grantees of the considerations named. On or about October 18, 1920, the son paid the $10,000, the consideration named in the deed to him; the daughters paid the $21,000 named as the consideration in the deed to them; and the deeds were delivered and recorded. The deceased paid her indebtedness; and, at the time of her death, her estate, not counting the claimed advancements to her children, amounted to about $24,000. The lower court found the value of the land so conveyed to the son to be $30,435, and of that conveyed to the daughters, $54,864.

This action was brought in probate, to have the difference

1. DESCENT AND DISTRIBUTION: advancements: difference between purchase price and value of land.

between the amounts paid by the respective grantees and the value of the lands so conveyed declared advancements, to be taken into account in the distribution of the estate. The trial court found for the plaintiff, fixed the value of the respective tracts as stated above, and held that Dennis L. Callan had received an advancement to the amount of $20,435, and each of the three daughters to the amount of $11,288. The correctness of this judgment is the only question presented on the appeal.

The action is in probate, and was tried to the court below as an ordinary proceeding, and is reviewable here only on error. The finding of the court upon the facts has the force and effect of the verdict of a jury, and will not be disturbed unless it appears it is without substantial support in the evidence. *Calhoun v. Taylor,* 178 Iowa 56; *Watt v. Robbins,* 160 Iowa 587; *McGovern v. Heery,* 159 Iowa 507; *Leathers v. Oberlander,* 139 Iowa 179; *Art-Aseptible Furniture Co. v. Shannon,* 159 Iowa 225; *Dodge v. Grain Shippers' Mut. F. Ins. Co.,* 176 Iowa 316; *Ames Evening Times v. Ames Weekly Tribune,* 183 Iowa 1188.

Where there is a voluntary gift from a parent to a child, it is presumed, in the absence of evidence to the contrary, to be an advancement, in anticipation of the child's future share in the parent's estate. *Burton v. Baldwin,* 61 Iowa 283; *McMahill v. McMahill,* 69 Iowa 115; *Phillips v. Phillips,* 90 Iowa 541; *Finch v. Garrett,* 102 Iowa 381; *Bissell v. Bissell,* 120 Iowa 127; *Calhoun v. Taylor,* supra; *Bash v. Bash,* 182 Iowa 55; *Thompson v. Ohl,* 187 Iowa 654, 658. Whether such a gift is an advancement or an absolute gift, and not in anticipation of the child's future interest in the estate, depends on the intent of the donor at the time of the transfer. *Ellis v. Newell,* 120 Iowa 71; *Calhoun v. Taylor,* supra.

Where land is conveyed by a parent to a child, and a consideration is paid, if the difference between the price paid and the value of the land is great, the conveyance is to be regarded as voluntary, to the extent of the difference. *Strong v. Lawrence,* 58 Iowa 55; *Fuller v. Griffith,* 91 Iowa 632. And where the amount paid is very inadequate, the difference will be presumed to be an advancement. *Mossestad v. Gunderson,* 140 Iowa 290. See, also, *Holland v. Bonner,* 142 Ark. 214 (218 S. W.

665, 26 A. L. R. 1101, and note at page 1149); *Mumford v. Mumford* (Mo. App.), 194 S. W. 898.

The effect of the finding of the court was to say that the appellants had not overcome the presumption that the difference between the respective amounts paid by them to their mother and the value of the land received by them was intended by her as an advancement.

The testimony on both sides, so far as it relates to this proposition, has to do with declarations of the deceased before and during the time that the transactions in question were in process of being closed. While the testimony of the witnesses to these declarations is not contradicted, yet it must be said that the declarations testified to by them are far from consistent, and are difficult, if not impossible, of reconciliation. The question, of necessity, is largely one of the credibility of the witnesses. Where a case is not triable *de novo* here, this court will not review the evidence for the purpose of sitting in judgment upon the weight of the evidence or the credibility of the witnesses. *McGovern v. Heery,* supra. The testimony of the banker with whom the deceased consulted to some extent, and who prepared the deeds, tends to support appellants' contention that the difference between the value of the lands and the amounts paid by the respective grantees was not intended by the deceased as an advancement, to be taken into account in the distribution of her estate. It is to the effect that she contemplated making a will and leaving $5,000 in trust for the grandchild, and that this was not done when her attention was called to the fact that she would have left, after conveying the land and paying her debts, only about $24,000, and that the grandchild's interest in that, in the absence of a will, would amount to about $5,000. There are other circumstances that lend further support to this view. On the other hand, the relations between the deceased and the widow of her deceased son, the mother of plaintiff's ward, and with her grandchild, were close. She made her home with her daughter-in-law, and cared for the child during the mother's absences in following her vocation of nurse. The daughter-in-law testified that, in March, 1920, she told the de-

2. APPEAL AND ERROR: scope of review: probate proceedings.

ceased about hearing that she had divided the land, and that the deceased replied:

"Don't be mad at me, Maggie; I was going to leave you a share, but the rest of them told me you wasn't entitled to it."

Upon being then asked what she was going to do about Dorothy (her granddaughter), she replied:

"I am going to leave Dorothy Joe's full share. You know I would do the right thing with Dorothy."

She further testified to another conversation with the deceased before the delivery of the deeds, in which the deceased told her not to worry; that talk of a trust fund for Dorothy was only street talk; that it wasn't fixed yet. She also said that, in response to the direct question as to what she was going to leave Dorothy, the grandmother replied that she was going to leave Dorothy, Joe's full share. While there is testimony as to a declaration on the part of deceased that she had talked the matter over with her children, there is no evidence that the conveyance of the land to them was the result of any bargain with them, and nothing to rebut the presumption that, to the extent the value of the land exceeded the amounts paid, the conveyances were purely voluntary.

Were the proposition to be determined in this court on the weight of the evidence, we would experience some difficulty in reaching a wholly satisfactory conclusion; but in view of the testimony we have set out, we cannot say that there is no substantial evidence to sustain the conclusion of the lower court that the difference between what appellants paid and the value of the lands they received was by way of advancement, and to be taken into account in distributing the estate, and was so intended by the deceased.

The judgment is—*Affirmed.*

ARTHUR, C. J., and STEVENS and DE GRAFF, JJ., concur.